RICARDO OCHOA, CSB#206462
rochoa@union-attorneys.org
RICARDO MARTINEZ, CSB#332690
rmartinez@union-attorneys.org
OCHOA │ LAW
3737 Camino Del Rio South, Suite 407
San Diego, CA 92108
Telephone: (619) 285-1662

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES O'BRIEN, an individual; RICKY JORDAN, an individual; TIM MATTHES, an individual; JEREMY BURTON, an individual; GREGORY DRUMMONDS, an individual; and JOSHUA WALTER, an individual,<br><br>PLAINTIFFS,<br><br>vs.<br><br>SIEGE ELECTRIC, INC., a corporation,<br><br>DEFENDANT. | CASE NO.:  '23 CV 0897 BAS DEB<br><br>**COMPLAINT AND COLLECTIVE ACTION FOR:**<br>1) **LIQUIDATED DAMAGES,**<br>2) **STATUTORY PENALTIES,**<br>3) **CIVIL PENALTIES, AND**<br>4) **ATTORNEYS' FEES**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiffs JAMES O'BRIEN ("O'BRIEN"), RICKY JORDAN ("JORDAN"), TIMOTHY MATTHES ("MATTHES"), JEREMY BURTON ("BURTON"), GREGORY DRUMMONDS ("DRUMMONDS"), and JOSHUA WALTER ("WALTER") (collectively "PLAINTIFFS"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby file this complaint against Defendant SIEGE ELECTRIC, INC. ("SIEGE"). Plaintiffs hereby allege the following:

<u>PARTIES</u>

1.      Defendant SIEGE is a California corporation with its headquarters in San Diego County. At all relevant times to this action, SIEGE was a construction industry employer and an electrical contractor licensed by the State of California. At all relevant times, SIEGE was signatory to various collective bargaining agreements ("CBAs") with Local 569 of the International Brotherhood of Electrical Workers ("IBEW 569"), including the Inside Agreement, the Streetlight Agreement, and the Construction Wireman/Construction Electrician Memorandum & Addendum ("CW/CE Addendum") to the Inside Agreement.

2.      At all relevant times herein, Defendant SIEGE performed electrical work on various construction projects throughout the State of California. As part of this business, SIEGE employed journeymen wiremen, apprentice wiremen, construction wiremen, construction electricians, streetlight technicians, sound technicians, apprentice sound technicians, and journeymen foremen (collectively "electrical workers").

3.      Plaintiff O'BRIEN is an adult who had been employed by Defendant SIEGE from May 10, 2022 to August 16, 2022 as a Journeyman Wireman. SIEGE employed O'BRIEN under the terms of the Inside Agreement in effect at that time.

///

///

COMPLAINT

4.      Plaintiff JORDAN is an adult who has been employed intermittently by Defendant SIEGE between March 22, 2022 and December 2022 as a Journeyman Wireman. SIEGE employed JORDAN under the terms of the Inside Agreement in effect at that time.

5.      Plaintiff MATTHES is an adult who has been employed by Defendant SIEGE from June 14, 2022 to October 13, 2022 as a Journeyman Wireman. SIEGE employed MATTHES under the terms of the Inside Agreement in effect at that time.

6.      Plaintiff BURTON is an adult who has been employed by Defendant SIEGE from May 25, 2022 to December 20, 2022 as a Journeyman Wireman. SIEGE employed BURTON under the terms of the Inside Agreement in effect at that time.

7.      Plaintiff DRUMMONDS is an adult who has been employed by Defendant SIEGE since August 12, 2020 as a Journeymen Wireman. SIEGE employed DRUMMONDS under the terms of the Inside Agreement in effect at that time.

8.      Plaintiff WALTER is an adult who has been employed by Defendant SIEGE from August 16, 2022 to September 1, 2022 as a Journeymen Wireman. SIEGE employed WALTER under the terms of the Inside Agreement in effect at that time.

9.      PLAINTIFFS are informed and believe, and thereon allege, that at all relevant times to this action SIEGE employed at least 28 electrical workers on jobs covered by this Complaint.

10.      PLAINTIFFS bring this action on behalf of themselves and all other similarly situated employees, present and former, who were affected by the actions, policies and procedures of Defendant SIEGE as described herein. Further, PLAINTIFFS sue on behalf of themselves and those members of the classes defined below who have filed or will file with the Court their consents to sue under

the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA" or the "Act").

11.    In addition, and in the alternative, PLAINTIFFS bring this action in their individual and personal capacities, separate and apart from the class claims set forth herein.

JURISDICTION AND VENUE

12.    As described more fully below, this Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331, 1337, and jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

13.    At all relevant times to this action, SIEGE was a construction industry employer located within the geographic jurisdiction of the United States District Court for the Southern District of California. Therefore, venue is proper under 28 U.S.C. § 1391.

FACTUAL ALLEGATIONS

14.    PLAINTIFFS allege that they have suffered injury in fact and economic harm, as described in detail below, from Defendant SIEGE's violations of the FLSA and the California Labor Code and thus seek waiting time penalties, civil penalties, and liquidated damages for such injury.

15.    Defendant SIEGE issues paychecks to employees every Thursday (*i.e.* the designated payday) for all wages earned the prior workweek.

16.    Beginning in June 2022, Defendant SIEGE periodically failed to pay wages on the date they became due and refused to ensure all future payments were paid on time.

**James O'Brien**

17.    Plaintiff O'BRIEN worked for Defendant SIEGE from May 10, 2022 to August 16, 2022.

18. Under the terms of the Inside Agreement, O'BRIEN's hourly wages were $55.20 as of June 6, 2022.

19. Plaintiff O'BRIEN typically worked eight hours per day and forty hours a week for Defendant SIEGE. Defendant SIEGE paid Plaintiff O'BRIEN on a weekly basis.

20. On or about June 2, 2022, Plaintiff O'BRIEN received a paycheck from Defendant SIEGE. That paycheck, Check # 824 drawn from Defendant SIEGE's US Bank account, was in the amount of $1,720.47.

21. On or about June 6, 2022, Plaintiff O'BRIEN deposited the paycheck received on June 2. On or about June 7, 2022, Plaintiff O'BRIEN was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds.

22. On or about June 7, 2022, Defendant SIEGE provided Plaintiff O'BRIEN with a new check in the amount of the paycheck that had bounced. That same day, Plaintiff O'BRIEN was able to cash the check.

23. Plaintiff O'BRIEN waited 5 days, from June 2 to June 7, 2022, to receive the wages he was owed due to Defendant SIEGE's payment by a check from an account with insufficient funds.

24. On or about August 11, 2022, Plaintiff O'BRIEN received a paycheck from Defendant SIEGE. That paycheck, Check # 1575 drawn from Defendant SIEGE's US Bank account, was in the amount of $1,413.55.

25. On or about August 15, 2022, Plaintiff O'BRIEN deposited the paycheck received on August 11. On or about August 17, 2022, Plaintiff O'BRIEN was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds.

26. On or about August 19, 2022, Defendant SIEGE provided Plaintiff O'BRIEN with a new check in the amount of the paycheck that had bounced. That same day, Plaintiff O'BRIEN was able to cash the check.

///

27.     Plaintiff O'BRIEN waited 8 days, from August 11 to August 19, 2022, to receive the wages he was owed due to Defendant SIEGE's payment by a check from an account with insufficient funds.

28.     On July 7, 2022, payment of wages was due for the workweek ending on July 3, 2022. Plaintiff O'BRIEN did not receive a paycheck for those earned wages until July 8, 2022.

29.     On August 18, 2022, payment for wages were due for the workweek ending on August 14, 2022. Plaintiff O'BRIEN did not receive a paycheck from Defendant SIEGE for those earned wages until August 19, 2022.

30.     On February 3, 2023, Plaintiff O'BRIEN, by and through his attorneys, requested from Defendant SIEGE his personnel records, wage statements, and any and all instruments signed by Plaintiff O'BRIEN relating to his obtaining and holding employment with Defendant pursuant to California Labor Code Sections 226, 432, and 1198.5.

31.     As of March 5, 2023, Plaintiff O'BRIEN has not received and Defendant SIEGE has not provided any of the requested records.

**Ricky Jordan**

32.     Plaintiff JORDAN worked for Defendant SIEGE from March 22, 2022 to September 26, 2022 and from October 7, 2022 to December 2022.

33.     Under the terms of the Inside Agreement, Plaintiff JORDAN's hourly wages were $51.20 as of June 6, 2022.

34.     Plaintiff JORDAN typically worked eight hours per day and forty hours a week for Defendant SIEGE. Defendant SIEGE paid Plaintiff JORDAN on a weekly basis.

35.     On or about June 2, 2022, Plaintiff JORDAN received a paycheck from Defendant SIEGE. That paycheck, Check # 821 drawn from Defendant SIEGE's US Bank account, was in the amount of $1,482.73. Plaintiff JORDAN deposited the check that same day.

36.     On or about June 6, 2022, Plaintiff JORDAN was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds.

37.     On or about June 7, 2022, Defendant SIEGE provided Plaintiff JORDAN with a new check in the amount of the paycheck that had bounced. That same day, Plaintiff JORDAN was able to cash the check.

38.     Plaintiff JORDAN waited 5 days, from June 2 to June 7, 2022, to receive the wages he was owed due to Defendant SIEGE's payment by a check from an account with insufficient funds.

39.     On or about June 16, 2022, Plaintiff JORDAN received a paycheck from Defendant SIEGE. That paycheck, Check # 901 drawn from Defendant SIEGE's US Bank account, was in the amount of $1,329.29. Plaintiff Jordan deposited the check that same day.

40.     On or about June 21, 2022, Plaintiff JORDAN was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds.

41.     On or about June 27, 2022, Defendant SIEGE provided Plaintiff JORDAN with a new check in the amount of the paycheck that had bounced. That same day, Plaintiff JORDAN was able to cash the check.

42.     Plaintiff JORDAN waited 11 days, from June 16 to June 27, 2022, to receive the wages he was owed due to Defendant SIEGE's payment by a check from an account with insufficient funds.

43.     On or about September 16, 2022, Plaintiff JORDAN received a paycheck from Defendant SIEGE. That paycheck, Check # 5341 drawn from Defendant SIEGE's US Bank account, was due on September 15, 2022 and was in the amount of $1,015.28. Plaintiff JORDAN deposited the check that same day.

44.     On or about September 20, 2022, Plaintiff JORDAN was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds.

///

///

45. On or about September 21, 2022, Defendant SIEGE provided Plaintiff JORDAN with a new check in the amount of the paycheck that had bounced. That same day, Plaintiff JORDAN was able to cash the check.

46. Plaintiff JORDAN waited 6 days, from September 15 to September 21, 2022, to receive the wages he was owed due to Defendant SIEGE's late payment and payment by a check from an account with insufficient funds.

47. On or about October 27, 2022, Plaintiff JORDAN received a paycheck from Defendant SIEGE. That paycheck, Check # 5536 drawn from Defendant SIEGE's US Bank account, was in the amount of $1,421.31. Plaintiff Jordan deposited the check that same day.

48. On or about October 31, 2022, Plaintiff JORDAN was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds.

49. On or about November 3, 2022, Defendant SIEGE provided Plaintiff JORDAN with a new check in the amount of the paycheck that had bounced. That same day, Plaintiff JORDAN was able to cash the check.

50. Plaintiff JORDAN waited 7 days, from October 27 to November 3, 2022, to receive the wages he was owed due to Defendant SIEGE's payment by a check from an account with insufficient funds.

51. On at least the following pay dates, payment of wages were due for the prior workweek but were not issued by Defendant SIEGE and received by Plaintiff JORDAN until the end of the following workday:

        a. July 27, 2022;

        b. August 4, 2022;

        c. August 11, 2022;

        d. August 18, 2022;

        e. September 1, 2022;

        f. September 8, 2022;

        g. September 15, 2022;

h.  December 8, 2022.

**Timothy Matthes**

52.    Plaintiff MATTHES worked for Defendant SIEGE from June 14, 2022 to October 13, 2022.

53.    Under the terms of the Inside Agreement, Plaintiff MATTHES's hourly wages were $55.20 as of June 6, 2022.

54.    Plaintiff MATTHES typically worked eight hours per day and forty hours a week for Defendant SIEGE. Defendant SIEGE paid Plaintiff MATTHES on a weekly basis.

55.    On or about September 16, 2022, Plaintiff MATTHES received a paycheck from Defendant SIEGE. That paycheck, was drawn from Defendant SIEGE's US Bank account, was due on September 15, 2022 and was in the amount of $1,915.44. Plaintiff MATTHES deposited the check that same day.

56.    On September 22, 2022, Plaintiff MATTHES was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds.

57.    On or about September 26, 2022, Defendant SIEGE provided Plaintiff MATTHES with a new check in the amount of the paycheck that had bounced. That same day, Plaintiff MATTHES was able to cash the check.

58.    Plaintiff MATTHES waited 11 days, from September 15 to September 26, 2022, to receive the wages he was owed due to Defendant SIEGE's payment by a check from an account with insufficient funds.

59.    On or about September 23, 2022, Plaintiff MATTHES received a paycheck from Defendant SIEGE. That paycheck, Check # 5366 drawn from Defendant SIEGE's US Bank account, was due on September 22, 2022 and was in the amount of $1,915.44. Plaintiff MATTHES deposited the check that same day.

60.    On or about September 23, 2022, Plaintiff MATTHES was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds.

///

61.    On or about September 26, 2022, Defendant SIEGE provided Plaintiff MATTHES with a new check in the amount of the paycheck that had bounced. That same day, Plaintiff MATTHES was able to cash the check.

62.    Plaintiff MATTHES waited 4 days, from September 22 to September 26, 2022, to receive the wages he was owed due to Defendant SIEGE's payment by a check from an account with insufficient funds.

63.    On at least the following pay dates, payment of wages were due for the prior workweek but were not issued by Defendant SIEGE and received by Plaintiff MATTHES until the end of the following workday:

     a.  June 23, 2022;

     b.  September 1, 2022;

     c.  September 8, 2022;

     d.  September 15, 2022;

     e.  September 22, 2022.

**Jeremy Burton**

64.    Plaintiff BURTON worked for Defendant SIEGE from May 25, 2022 to December 20, 2022.

65.    Under the terms of the Inside Agreement, Plaintiff BURTON's hourly wages were $55.20 as of June 6, 2022.

66.    Plaintiff BURTON typically worked eight hours per day and forty hours a week for Defendant SIEGE. Defendant SIEGE paid Plaintiff BURTON on a weekly basis.

67.    On or about September 16, 2022, Plaintiff BURTON received a paycheck from Defendant SIEGE. That paycheck, Check # 5333 drawn from Defendant SIEGE's US Bank account, was due on September 15, 2022 and was in the amount of $1,254.16. Plaintiff BURTON deposited the check that same day. That day, Plaintiff BURTON was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds.

68.     On or about September 21, 2022, Defendant SIEGE provided Plaintiff BURTON with a new check in the amount of the paycheck that had bounced. That same day, Plaintiff BURTON was able to cash the check.

69.     Plaintiff BURTON waited 6 days, from September 15 to September 21, 2022, to receive the wages he was owed due to Defendant SIEGE's payment by a check from an account with insufficient funds.

70.     On or about December 1, 2022, Plaintiff BURTON received a paycheck from Defendant SIEGE. That paycheck, Check # 5620 drawn from Defendant SIEGE's US Bank account, was in the amount of $953.42. Plaintiff BURTON deposited the check and was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds that same day.

71.     On or about December 2, 2022, Defendant SIEGE provided Plaintiff BURTON with a new check in the amount of the paycheck that had bounced. That same day, Plaintiff BURTON was able to cash the check.

72.     Plaintiff BURTON waited 1 day, from December 1 to December 2, 2022, to receive the wages he was owed due to Defendant SIEGE's payment by a check from an account with insufficient funds.

73.     On at least the following pay dates, payment of wages were due for the prior workweek but were not issued by Defendant SIEGE and received by Plaintiff BURTON until the end of the following workday:

        a.  August 18, 2022;

        b.  August 25, 2022;

        c.  September 1, 2022;

        d.  September 8, 2022;

        e.  September 15, 2022;

        f.  September 22, 2022.

///

///

**Gregory Drummonds**

74.    Plaintiff DRUMMONDS has worked for Defendant SIEGE since August 12, 2020.

75.    Under the terms of the Inside Agreement, DRUMMONDS' hourly wages were $55.20 as of June 6, 2022.

76.    Plaintiff DRUMMONDS typically worked eight hours per day and forty hours a week for Defendant SIEGE. Defendant SIEGE paid Plaintiff DRUMMONDS on a weekly basis.

77.    On or about June 2, 2022, Plaintiff DRUMMONDS received a paycheck from Defendant SIEGE. That paycheck, Check # 816 drawn from Defendant SIEGE's US Bank account, was in the amount of $1,081.73. Plaintiff DRUMMONDS deposited the check that same day.

78.    On or about June 7, 2022, Plaintiff DRUMMONDS was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds. That day, Defendant SIEGE wired Plaintiff DRUMMONDS the amount owed on Check # 816.

79.    Plaintiff DRUMMONDS waited 5 days, from June 2 to June 7, 2022, to receive the wages he was owed due to Defendant SIEGE's payment by a check from an account with insufficient funds.

80.    On or about August 11, 2022, Plaintiff DRUMMONDS received a paycheck from Defendant SIEGE. That paycheck, Check # 5201 drawn from Defendant SIEGE's US Bank account, was in the amount of $1,848.42. Plaintiff DRUMMONDS deposited the check that same day.

81.    On or about August 17, 2022, Plaintiff DRUMMONDS was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds.

82.    On or about August 18, 2022, Defendant SIEGE provided Plaintiff DRUMMONDS with a new check in the amount of the paycheck that had bounced. That same day, Plaintiff DRUMMONDS was able to cash the check.

83.     Plaintiff DRUMMONDS waited 7 days, from August 11 to August 18, 2022, to receive the wages he was owed due to Defendant SIEGE's payment by a check from an account with insufficient funds.

84.     On or about September 16, 2022, Plaintiff DRUMMONDS received a paycheck from Defendant SIEGE. That paycheck, Check # 5353 drawn from Defendant SIEGE's US Bank account, was due on September 15, 2022 and was in the amount of $1,177.71. Plaintiff DRUMMONDS deposited the check that same day. That day, Plaintiff DRUMMONDS was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds.

85.     On or about September 21, 2022, Defendant SIEGE provided Plaintiff DRUMMONDS with a new check in the amount of the paycheck that had bounced. That same day, Plaintiff DRUMMONDS was able to cash the check.

86.     Plaintiff DRUMMONDS waited 6 days, from September 16 to September 21, 2022, to receive the wages he was owed due to Defendant SIEGE's payment by a check from an account with insufficient funds.

87.     On or about December 1, 2022, Plaintiff DRUMMONDS received a paycheck from Defendant SIEGE. That paycheck, Check # 5623 drawn from Defendant SIEGE's US Bank account, was in the amount of $841.06. Plaintiff DRUMMONDS deposited the check that same day. On December 6, 2022, Plaintiff DRUMMONDS was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds.

88.     On or about December 6, 2022, Defendant SIEGE provided Plaintiff DRUMMONDS with a new check in the amount of the paycheck that had bounced. That same day, Plaintiff DRUMMONDS was able to cash the check.

89.     Plaintiff DRUMMONDS waited 5 days, from December 1 to December 6, 2022, to receive the wages he was owed due to Defendant SIEGE's payment by a check from an account with insufficient funds.

///

90.     On or about December 9, 2022, Plaintiff DRUMMONDS received a paycheck from Defendant SIEGE. That paycheck, Check # 64 drawn from Defendant SIEGE's US Bank account, was in the amount of $1,107.92. Plaintiff DRUMMONDS deposited the check that same day. On December 15, 2022, Plaintiff DRUMMONDS was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds.

91.     On or about December 16, 2022, Defendant SIEGE provided Plaintiff DRUMMONDS with a new check in the amount of the paycheck that had bounced. That same day, Plaintiff DRUMMONDS was able to cash the check.

92.     Plaintiff DRUMMONDS waited 7 days, from December 9 to December 16, 2022, to receive the wages he was owed due to Defendant SIEGE's payment by a check from an account with insufficient funds.

93.     On or about May 4, 2023, Plaintiff DRUMMONDS received a paycheck from Defendant SIEGE. That paycheck, Check # 6217 drawn from Defendant SIEGE's US Bank account, was in the amount of $901.02. Plaintiff DRUMMONDS deposited the check that same day. On May 10, 2023, Plaintiff DRUMMONDS was notified by his bank that the paycheck had been returned as unpaid due to insufficient funds.

94.     On or about May 11, 2023, Defendant SIEGE provided Plaintiff DRUMMONDS with a new check in the amount of the paycheck that had bounced. That same day, Plaintiff DRUMMONDS was able to cash the check.

95.     Plaintiff DRUMMONDS waited 7 days, from May 4 to May 11, 2022, to receive the wages he was owed due to Defendant SIEGE's payment by a check from an account with insufficient funds.

96.     On at least the following pay dates, payment of wages were due for the prior workweek but were not issued by Defendant SIEGE and received by Plaintiff DRUMMONDS until the end of the following workday:

a.  August 18, 2022;

b.  August 25, 2022;

c.  September 1, 2022;

d.  September 8, 2022;

e.  September 15, 2022;

f.  September 18, 2022;

g.  September 22, 2022;

h.  April 2, 2023.

**<u>Joshua Walter</u>**

97.    Plaintiff WALTER worked for Defendant SIEGE from August 16, 2022 to September 1, 2022.

98.    Under the terms of the Inside Agreement, WALTER's hourly wages were $51.20 as of June 6, 2022.

99.    Plaintiff WALTER typically worked eight hours per day and forty hours a week for Defendant SIEGE. Defendant SIEGE paid Plaintiff WALTER on a weekly basis.

100.   On August 25, 2022, wages were due for the prior workweek but were not issued by Defendant SIEGE and received by Plaintiff WALTER until August 29, 2022.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

101.   PLAINTIFFS reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 100, inclusive.

102.   PLAINTIFFS bring this action under 29 U.S.C. § 216(b) as an "opt in" collective action.

103.   PLAINTIFFS are informed and believe and thereupon allege that other current and former employees of Defendant SIEGE, employed in the three (3) years immediately proceeding the filing of this Complaint, were similarly harmed as PLAINTIFFS due to Defendant's willful failure to pay wages on the date which

they became due and by the willful payment of checks from accounts with insufficient funds as described above.

104. The opt-in class is defined as follows:

All persons who held the positions of journeymen wiremen, apprentice wiremen, construction wiremen, construction electricians, streetlight technicians, sound technicians, apprentice sound technicians, and journeymen foremen while working for Defendant SIEGE in the three (3) years immediately preceding the filing of this Complaint to the present who did not receive a paycheck on the designated payday or received a paycheck that was returned as unpaid due to being drawn from an account with insufficient funds.

## CALIFORNIA LABOR CODE PRIVATE ATTORNEYS GENERAL ACT

105. PLAINTIFFS reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 104, inclusive.

106. Section 2699(a) of the California Labor Code's Private Attorneys General Act, CA Lab. Code §§ 22699 et seq. ("PAGA"), provides that aggrieved employees may, on behalf of themselves and other current or former employees, recover civil penalties provided for by any provision of the California Labor Code for violations of said Code through a civil action pursuant to the procedures set forth in California Labor Code § 2699.3. Further, California Labor Code § 2699(f) provides that for all provisions of the California Labor Code for which a civil penalty is not specifically provided, the established civil penalties for a violation of those provisions shall be as follows:

(1) If, at the time of the alleged violation, the person does not employ one or more employees, the civil penalty is five hundred dollars ($500).
(2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each

- 15 -

COMPLAINT

aggrieved employee per pay period for each subsequent violation.

107. California Labor Code § 2699.3 provides that a civil action by an aggrieved employee alleging a violation of any provision listed in Section 2699.5 may be commenced after the following requirements have been met:

(a)(1)(A)  The aggrieved employee or representative has given written notice by online filing with the Labor and Workforce Development Agency and by certified mail to the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation;

(B)  A notice filed with the Labor and Workforce Development Agency pursuant to subparagraph (A) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75). The fees required by this subparagraph are subject to waiver in accordance with the requirements of Sections 68632 and 68633 of the Government Code;

(C)  The fees paid pursuant to subparagraph (B) shall be paid into the Labor and Workforce Development Fund and used for the purposes specified in subdivision (j) of Section 2699;

(2)(A)  The agency has notified the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violation within 60 calendar days of the postmark date of the notice received pursuant to paragraph (1). Upon receipt of that notice or if no notice is provided within 65 calendar days of the postmark date of the notice given pursuant to paragraph (1), the aggrieved employee may commence a civil action pursuant to Section 2699;

(B)  If the agency intends to investigate the alleged violation, it shall notify the employer and the aggrieved employee or representative by certified mail of its decision within 65 calendar days of the postmark date of the notice received pursuant to paragraph (1). Within 120 calendar days of that decision, the agency may investigate the alleged violation and issue any appropriate citation. If the agency determines that no citation will be issued, it shall notify the employer and

- 16 -

aggrieved employee of that decision within five business days thereof by certified mail. Upon receipt of that notice or if no citation is issued by the agency within the time limits prescribed by subparagraph (A) and this subparagraph or if the agency fails to provide timely or any notification, the aggrieved employee may commence a civil action pursuant to Section 2699; and

(C)   Notwithstanding any other provision of law, a plaintiff may as a matter of right amend an existing complaint to add a cause of action arising under this part at any time within 60 days of the time periods specified in this part.

108.   California Labor Code § 2699.3 also provides that a civil action by an aggrieved employee alleging a violation of any provision other than those listed in Section 2699.5 may be commenced after the following requirements are met:

(c)(1)(A)   The aggrieved employee or representative shall give written notice by online filing with the Labor and Workforce Development Agency and by certified mail to the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation.

(B)   A notice filed with the Labor and Workforce Development Agency pursuant to subparagraph (A) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75). The fees required by this subparagraph are subject to waiver in accordance with the requirements of Sections 68632 and 68633 of the Government Code.

(C)   The fees paid pursuant to subparagraph (B) shall be paid into the Labor and Workforce Development Fund and used for the purposes specified in subdivision (j) of Section 2699.

(2)(A)   The employer may cure the alleged violation within 33 calendar days of the postmark date of the notice sent by the aggrieved employee or representative. The employer shall give written notice within that period of time by certified mail to the aggrieved employee or representative and by online filing with the agency if the alleged violation is cured, including a description of actions taken, and no civil action pursuant to

Section 2699 may commence. If the alleged violation is not cured within the 33-day period, the employee may commence a civil action pursuant to Section 2699.

(B)(i) Subject to the limitation in clause (ii), no employer may avail himself or herself of the notice and cure provisions of this subdivision more than three times in a 12-month period for the same violation or violations contained in the notice, regardless of the location of the worksite.

(ii) No employer may avail himself or herself of the notice and cure provisions of this subdivision with respect to alleged violations of paragraph (6) or (8) of subdivision (a) of Section 226 more than once in a 12-month period for the same violation or violations contained in the notice, regardless of the location of the worksite.

(3) If the aggrieved employee disputes that the alleged violation has been cured, the aggrieved employee or representative shall provide written notice by online filing with the agency and by certified mail to the employer, including specified grounds to support that dispute, to the employer and the agency. Within 17 calendar days of the receipt of that notice, the agency shall review the actions taken by the employer to cure the alleged violation, and provide written notice of its decision by certified mail to the aggrieved employee and the employer. The agency may grant the employer three additional business days to cure the alleged violation. If the agency determines that the alleged violation has not been cured or if the agency fails to provide timely or any notification, the employee may proceed with the civil action pursuant to Section 2699. If the agency determines that the alleged violation has been cured, but the employee still disagrees, the employee may appeal that determination to the superior court.

109.   On December 21, 2022, O'BRIEN, by and through his attorneys, filed the notice required by California Labor Code § 2699.3 ("PAGA Notice") with the California Labor and Workforce Development Agency and mailed the Notice to Defendant SIEGE via certified mail as required by California Labor Code § 2699.3(a)(1)(A).

///

- 18 -

110. The PAGA Notice alleged the following allegations: 1) Defendant SIEGE failed to provide payment of weekly wages to its employees in violation of Labor Code § 204b; 2) Defendant SIEGE provided payment by checks from accounts with insufficient funds in violation of California Labor Code § 203.1.

111. O'BRIEN is informed and believes and thereupon alleges that, other current and former employees of SIEGE were similarly harmed in the manner described in the allegations of the PAGA Notice.

## FIRST CAUSE OF ACTION

### Liquidated Damages Pursuant to FLSA § 216(b)

112. PLAINTIFFS reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 111, inclusive.

113. Section 206(b) of the FLSA requires an employer to pay each employee at least the minimum wage set by the Act. Section 216(b) of the FLSA provides that an employer who violates Section 206 shall be liable to the affected employee in the amount of unpaid minimum wages and an equal amount as liquidated damages. Further, a violation of Section 206 occurs when an employer fails to pay owed wages on the date they become due; *i.e.* the designated payday. *Biggs v. Wilson*, 1 F.3d 1537, 1543 (9th Cir. 1993). By paying employees with checks that subsequently bounced, SIEGE also failed to pay employees on the day their wages became due.

114. At all relevant times to this action, Defendant SIEGE was an "employer" as defined in Section 203(d) of the FLSA. Defendant SIEGE is also a construction industry employer who engages in commerce as defined in 29 U.S.C. § 203 with an annual gross volume of business in excess of $500,000.

115. At all relevant times to this action, PLAINTIFFS were "employees" as defined in 29 U.S.C. § 203(e) and were employed by Defendant SIEGE.

///

COMPLAINT

116.   Defendant SIEGE failed to pay PLAINTIFFS their wages when they became due on the designated payday as described in paragraphs 28 through 29, 51, 63, 73,96, and 100, inclusive. Defendant SIEGE further failed to pay PLAINTIFFS their wages when they became due by paying them with checks that subsequently bounced. As a result, Defendant SIEGE failed to timely pay PLAINTIFFS the minimum wage as required by 29 U.S.C. § 206(a).

117.   PLAINTIFFS are informed and believe and thereupon allege that other employees employed by Defendant SIEGE between June 2022 to the present were similarly harmed as PLAINTIFFS by Defendant SIEGE's failure to pay wages owed on the weekly payday.

118.   Pursuant to Section 216 of the FLSA Defendant SIEGE collectively owes PLAINTIFFS a cumulative total of at least $11,600 in liquidated damages for its failure to pay PLAINTIFFS – as described in paragraphs 28 through 29, 51, 63, 73,96, and 100, inclusive – in accordance with Section 206(a) of the FLSA, as well as attorneys' fees, and costs of this action.

<u>SECOND CAUSE OF ACTION</u>

**Waiting Time Penalties Pursuant to California Labor Code § 203.1**

**(By Plaintiffs O'BRIEN, JORDAN, MATTHES, BURTON, DRUMMONDS)**

119.   PLAINTIFFS reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 1118, inclusive.

120.   California Labor Code § 203.1 provides that an employer who pays an employee in the regular course of employment wages by a check which is subsequently returned for insufficient funds in the account from which the check is drawn owes that employee waiting time penalties equal to a day's wages for every day between the date the wages are due and when the employee is finally paid.

121.   Defendant SIEGE paid Plaintiffs O'BRIEN, JORDAN, MATTHES, BURTON, DRUMMONDS (collectively, "§ 203.1 PLAINTIFFS") wages by

checks which were subsequently returned for insufficient funds. As described above, PLAINTIFFS were forced to wait on several occasions Defendant SIEGE finally paid them the wages that were due.

122.   Pursuant to California Labor Code § 203.1, Defendant SIEGE owes each § 203.1 PLAINTIFF waiting time penalties, in an amount equal to each § 203.1 PLAINTIFFS' daily wages, for every day that the § 203.1 PLAINTIFFS had to wait for the wages which Defendant SIEGE owed, for a total of at least $48,849.60 in waiting time penalties.

## THIRD CAUSE OF ACTION

### Statutory Penalties Pursuant to Labor Code § 226

### (By Plaintiff O'BRIEN)

123.   PLAINTIFFS reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 122, inclusive.

124.   California Labor Code § 226(b) provides that covered employers must afford current and former employees the right to receive copies of wage statements that must be maintained pursuant to subdivision (a) of section 226. California Labor Code § 226(c) provides that a covered employer must comply with a request for copies of wage statements as soon as practicable and no later than 21 calendar days after the request is received. Further, California Labor Code § 226(f) provides that the requesting employee is entitled to a $750 penalty from the employer if it fails to produce the requested wage statements within the time set forth in subdivision (c) of section 226.

125.   At all relevant times to this action, Defendant SIEGE was an employer subject to the California Labor Code and section 226.

126.   On February 3, 2023, Plaintiff O'BRIEN requested copies of his wage statements pursuant to California Labor Code § 226. As of February 24, 2023, 21

///

days from Plaintiff O'BRIEN's request, Defendant SIEGE failed to produce copies of the requested wage statements.

127.    Pursuant to California Labor Code § 226, Defendant SIEGE owes Plaintiff O'BRIEN a statutory penalty of $750, plus reasonable attorneys' fees, and costs for failing to produce the requested wage statements within the statutorily mandated time frame.

FOURTH CAUSE OF ACTION

**Statutory Penalties Pursuant to Labor Code § 1198.5**

**(By Plaintiff O'BRIEN Against Defendant)**

128.    PLAINTIFFS reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 127, inclusive.

129.    California Labor Code § 1198.5(a) provides that current and former employees have a right to copies of personnel records relating to their performance or discipline. California Labor Code § 1198.5(b) provides that covered employers shall produce copies of personnel records no later than 30 calendar days after the request for copies is received. Further, California Labor Code §§ 1198.5(k) and (l) provides that the requesting employee is entitled to recover a $750 penalty, reasonable attorneys' fees and costs from the employer when it fails to produce copies of requested records within the specified period.

130.    At all relevant times to this action, Defendant SIEGE was an employer subject to the California Labor Code and section 1198.5.

131.    On February 3, 2023, Plaintiff O'BRIEN requested copies of his personnel records pursuant to California Labor Code § 1198.5. As of March 5, 2023, 30 days from Plaintiff O'BRIEN's request, Defendant SIEGE failed to produce copies of the requested records.

132.    Pursuant to California Labor Code § 1198.5, Defendant SIEGE owes Plaintiff O'BRIEN a statutory penalty of $750, reasonable attorneys' fees, and costs

for failing to produce the requested personnel records within the statutorily mandated time frame.

FIFTH CAUSE OF ACTION

**Civil Penalties Pursuant to The California Labor Code Private Attorneys General Act, California Labor Code § 2698 et seq.**

133. PLAINTIFFS reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 132, inclusive.

134. On December 21, 2022, O'BRIEN, by and through his attorneys, filed a PAGA Notice with the California Labor and Workforce Development Agency and mailed the PAGA Notice to Defendant SIEGE via certified mail as required by Labor Code § 2699.3(a)(1)(A).

135. O'BRIEN's PAGA Notice alleged that Defendant SIEGE committed the violations described in paragraph 110, and Defendant SIEGE was, in turn, liable for the corresponding civil penalties.

136. Defendant SIEGE has not cured the violations referenced in the PAGA Notice and has not provided written notice by certified mail to O'BRIEN within the period provided for in California Labor Code § 2699.3(c).

137. As of February 24, 2022, the Agency has not provided O'BRIEN notice of its intent to investigate the alleged violation. Accordingly, O'BRIEN seeks the following civil penalties plus interest, attorneys' fees, and costs pursuant to California Labor Code § 2699(a), (g) and (f):

**Civil Penalties Against Defendant SIEGE For Violation Of California Labor Code §§ 210 and 204b**

138. California Labor Code § 204b provides that labor performed by weekly-paid employees shall be paid for no later than the regular payday of the employer for such weekly-paid employee falling during the following calendar week. California Labor Code § 210 provides that any person who fails to pay the wages of an employee as provided in section 204b shall be subject to a civil penalty

of $100 per aggrieved employee for every initial violation and $200 dollars for each aggrieved employee for each subsequent violation plus 25 percent of the amount unlawfully withheld. California Labor Code § 210 also provides that employees may recover the civil penalties provided by that section through a civil action brought under Section 2699(a).

139.   Defendant SIEGE failed to pay O'BRIEN his wages when they became due on the customary weekly payday as described in paragraphs 28 through 29, inclusive.

140.   O'BRIEN is informed and believes and thereupon alleges that other employees employed by Defendant SIEGE between June 2022 to the present were similarly harmed as O'BRIEN by Defendant SIEGE's failure to pay wages owed on the customary weekly payday in those same weeks.

141.   Pursuant to Labor Code §§ 204b, 210, and 2699(a), Defendant SIEGE owes O'BRIEN and all other similarly harmed employees $100 per each aggrieved employee pay period for the initial violation and $200 dollars for each aggrieved employee pay period for each subsequent violation, for a total of at least $7,600 in civil penalties.

**Civil Penalties Against Defendant SIEGE For Violation of California Labor Code § 203.1**

142.   California Labor Code § 203.1 provides that any employer who pays their employees in the regular course of employment any wages or fringe benefits, or both, by check which is subsequently refused payment because the employer has insufficient funds in the account upon which the instrument is drawn shall be liable for penalties in the amount of those wages, fringe benefits, or both until the date of payment or until an action is commenced, but shall not accrue for more than 30 days. California Labor Code § 203.1 does not contain nor provide specified civil penalties. California Labor Code § 2699(f) provides, in relevant part, that for all provisions of the California Labor Code for which a civil penalty is not specifically

provided, the established civil penalties within that section, as alleged above, shall apply.

143.   Defendant SIEGE, during the regular course of business, paid the § 203.1 PLAINTIFFS wages by checks which were subsequently returned for insufficient funds and failed to pay the § 203.1 PLAINTIFFS the associated waiting time penalties owed as required by California Labor Code § 203.1. The § 203.1 PLAINTIFFS are informed and believe and thereupon allege that other employees were similarly paid their wages by checks which were subsequently returned for insufficient funds.

144.   Pursuant to California Labor Code §§ 203.1 and 2699(f) Defendant SIEGE owes the § 203.1 PLAINTIFFS and all other similarly harmed employees $100 per each aggrieved employee pay period for the initial violation and $200 dollars for each aggrieved employee pay period for each subsequent violation, for a total of at least $2,200 in penalties.

## DEMAND FOR JURY TRIAL

145.   PLAINTIFFS demand a jury trial.

## REQUEST FOR RELIEF

WHEREFORE, PLAINTIFFS request a judgment against SIEGE as follows:

1.   A monetary award for Plaintiff O'BRIEN against Defendant SIEGE in the amount of at least $7,820.80, consisting of the following:

    a. Liquidated damages pursuant to 29 U.S.C. § 216(b) in the amount of $580.00;

    b. Waiting time penalties pursuant to California Labor Code § 203.1 in the amount of $5,740.80.

    c. Statutory penalties in pursuant to California Labor Codes §§ 226 and 1198.5 in the amount of $1,500.00.

- 25 -

2.    A monetary award for Plaintiff RICKY JORDAN against Defendant SIEGE in the amount of at least $14,488.40, consisting of the following:

    a. Liquidated damages pursuant to 29 U.S.C. § 216(b) in the amount of $2,610.00;

    b. Waiting time penalties pursuant to California Labor Code § 203.1 in the amount of $11,878.40.

3.    A monetary award for Plaintiff TIMOTHY MATTHES against Defendant SIEGE in the amount of at least $8,074.00, consisting of the following:

    a. Liquidated damages pursuant to 29 U.S.C. § 216(b) in the amount of $1,450.00;

    b. Waiting time penalties pursuant to California Labor Code § 203.1 in the amount of $6,624.00.

4.    A monetary award for Plaintiff JEREMY BURTON against Defendant SIEGE in the amount of at least $4,831.20, consisting of the following:

    a. Liquidated damages pursuant to 29 U.S.C. § 216(b) in the amount of $1,740.00;

    b. Waiting time penalties pursuant to California Labor Code § 203.1 in the amount of $3,091.20.

5.    A monetary award for Plaintiff GREGORY DRUMMONDS against Defendant SIEGE in the amount of at least $20,577.20, consisting of the following:

    a. Liquidated damages pursuant to 29 U.S.C. § 216(b) in the amount of $2,030.00;

    b. Waiting time penalties pursuant to California Labor Code § 203.1 in the amount of $18,547.20.

6.    A monetary award for Plaintiff JOSHUA WALTER against Defendant SIEGE in the amount of at least $290.00 for liquidated damages pursuant to 29 U.S.C. § 216(b).

///

7.    Pre-judgement interest on all claims for nonpayment of wages pursuant to California Labor Code § 218.6;

8.    Civil penalties against Defendant SIEGE pursuant to the California Labor Code Private Attorneys General Act in the amount of at least $9,800.00;

9.    That this Court grant PLAINTIFFS their costs, including out-of-pocket expenses, and reasonable attorneys' fees pursuant to: California Labor Code §§ 226, 1198.5, and 2699(g)(1); California Code of Civil Procedure, § 1021.5; and 29 U.S.C. § 216(b); and

10.    Such other, further, and different relief as this Court may deem just and proper.

Dated: May 16, 2023                    **OCHOA|LAW**
                                       RICARDO OCHOA
                                       RICARDO MARTINEZ

                                       s/ Ricardo Ochoa
                                       Attorneys for Plaintiffs

COMPLAINT