UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES O'BRIEN, *et al.*,<br><br>                            Plaintiffs,<br><br>   v.<br><br>SIEGE ELECTRIC, INC.,<br><br>                            Defendant. | Case No. 23-cv-00897-BAS-DEB<br><br>**ORDER GRANTING PLAINTFFS' MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT (ECF No. 16)** |

Plaintiffs James O'Brien, Ricky Jordan, Tim Matthes, Jeremy Burton, Gregory Drummonds, and Joshua Walter bring this action against Defendant Siege Electric, Inc., for violations of the Fair Labor Standards Act ("FLSA"), the California Labor Code, and California's Private Attorneys General Act of 2004 ("PAGA"). (Compl., ECF No. 1.) On May 30, 2024, Plaintiffs filed a Motion to Approve the Settlement Agreement ("Settlement" or "Settlement Agreement"). (Mot., ECF No. 16.) The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); CivLR 7.1(d)(1). For the following reasons, the Court **GRANTS** the Motion for Approval of the Settlement Agreement.

## I. BACKGROUND

Plaintiffs are current or former employees alleging Defendant failed to pay wages on their due date and refused to ensure all future payments were timely paid. (Compl. ¶ 16.) Specifically, Plaintiffs are or were electrical workers with Siege Electric, Inc., a construction industry employer and an electrical contractor licensed by the State of California. (Compl. ¶ 1.) Plaintiffs assert they suffered injury in fact and economic harm resulting from Defendant's violations of the FLSA and the California Labor Code and thus seek waiting time penalties, civil penalties, and liquidated damages. (Compl. ¶ 14.) The parties have also identified other similarly aggrieved employees entitled to civil penalties pursuant to PAGA ("Aggrieved Employees"). (Settlement Agreement § 2, Martinez Decl. Ex. 2, ECF No. 16-4.)

On February 22, 2024, the parties participated in an Early Neutral Evaluation Conference with Magistrate Judge Daniel E. Butcher and reached an agreement in principle. (ECF No. 13.) On May 30, 2024, Plaintiffs motioned the Court for an order approving the Settlement, which would resolve all claims and causes of action in this lawsuit. (ECF No. 16.)

Under the terms of the Settlement Agreement, Defendant agrees to pay a total of $65,000.00 to Plaintiffs and Aggrieved Employees. (Settlement Agreement § 3.) The terms allocate $52,998.24 to be paid to Plaintiffs as follows: (1) $7,532.56 paid to James O'Brien; (2) $14,258.84 paid to Ricky Jordan; (3) $7,913.60 paid to Timothy Matthes; (4) $4,896.34 paid to Jeremey Burton; (5) $20,060.14 paid to Gregory Drummonds; and (6) $297.69 paid to Joshua Walters. (*Id.* § 3(d).)

Moreover, $12,001.76 of the Settlement shall be paid to Aggrieved Employees and the California Labor and Workforce Development Agency ("LWDA") as settlement of all claims for PAGA civil penalties. (*Id.* § 3(a).) Accordingly, the LWDA shall receive $9,001.32 of the PAGA claims, reflecting its 75% share, and Aggrieved Employees shall receive $3,000.44 of the PAGA claims, reflecting their remaining 25% share. (*Id.*) The Aggrieved Employees shall be paid as follows: (1) $354.39 paid to Charles Hann; (2)

$283.51 paid to Joshua McBride; (3) $94.50 paid to Juan Ayala; (4) $283.51 paid to Luis Carranza; and (5) $23.61 paid to Magno Meneses.  (*Id.* § 3(e).)

In return, Plaintiffs agree to release all claims against Defendant raised in this action, including claims raised under PAGA.  (Mot. 3:21–22.)

## II. LEGAL STANDARDS

### A. Fair Labor Standards Act

"The FLSA was enacted to protect covered workers from substandard wages and oppressive working hours."  *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1171 (S.D. Cal. 2016).  Specifically, "[t]he FLSA establishes federal minimum wage, maximum-hour, and overtime guarantees that cannot be modified by contract."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013).  "[C]laims for unpaid wages under the FLSA may only be waived or otherwise settled if settlement is supervised by the Secretary of Labor or approved by a district court."  *Selk*, 159 F. Supp. 3d at 1172.

"The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved."  *Beidleman v. City of Modesto*, No. 1:16-cv-1100-DAD-SKO, 2017 WL 5257087, at *2 (E.D. Cal. Oct. 26, 2017).  However, district courts in the Ninth Circuit generally apply the standard adopted by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).  *Id.*; *see also Roberts v. City of Chula Vista*, No. 16-cv-1955-MMA (DHB), 2017 WL 6541105, at *2 (S.D. Cal. Dec. 21, 2017).  Thus, in reviewing a FLSA settlement, courts must determine whether the settlement represents a "fair and reasonable resolution of a bona fide dispute."  *Lynn's Food Stores*, 679 F.2d at 1355.  "A bona fide dispute exists when there are legitimate questions about 'the existence and extent of Defendant's FLSA liability.'"  *Selk*, 159 F. Supp. 3d at 1172 (quoting *Ambrosino v. Home Depot U.S.A., Inc.*, No. 11-cv-1319 L(MDD), 2014 WL 1671489, at *1 (S.D. Cal. Apr. 28, 2014)).  A court will not approve a settlement where there is no question that the FLSA entitles the plaintiffs to the relief sought, because it would shield employers from the full cost of complying with the statute.  *See id.*

Once a court determines that a bona fide dispute exists, "it must then determine whether the settlement is fair and reasonable." *Id.* Courts should consider the following factors in evaluating whether a settlement is fair and reasonable: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and the amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel; and (6) the possibility of fraud or collusion. *Id.* at 1173. A "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.*

Lastly, the Court must evaluate whether the award of attorneys' fees and costs is reasonable. *See Selk*, 159 F. Supp. 3d at 1180; *see also* 29 U.S.C. § 216(b) (noting that in a FLSA action, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

**B.      Private Attorneys General Act**

The California Legislature enacted PAGA to allow employees to initiate a civil action against their employers for Labor Code violations. *See Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 429 (9th Cir. 2015). Under PAGA, "an aggrieved employee" may bring an enforcement action "on behalf of himself or herself and other current or former employees." Cal. Labor Code § 2699(a). Because the LWDA and its constituent departments and divisions are unable to prosecute employers for every Labor Code violation, "[a]n employee bringing a PAGA action does so as the proxy or agent of the state's labor law enforcement agencies." *Sakkab*, 803 F.3d at 435 (internal citations omitted).

Consequently, the parties are required to submit any proposed settlement to the LWDA concurrently with its submission to the court. Cal. Labor Code § 2699(l)(2). Additionally, the court must review and approve any penalties sought. *Id.*

Nonetheless, "PAGA does not provide express guidance about the scope or nature of judicial review." *Abelar v. Am. Residential Servs., L.L.C.*, No. ED CV19-00726 JAK (JPRx), 2019 WL 6054607, at *3 (C.D. Cal. Nov. 14, 2019). In the absence of binding guidance, federal district courts reviewing PAGA settlements have drawn on factors utilized by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), which are used to evaluate whether a class action settlement is "fundamentally fair, adequate, and reasonable." *See O'Connor v. Uber Techs.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016). Many of the factors used to evaluate class action settlements, such as "the strength of the plaintiff's case; the risk, expense complexity, and likely duration of further litigation . . . the amount offered in settlement . . . the experience and views of counsel" can be useful in evaluating the fairness of a PAGA settlement. *Hanlon*, 150 F.3d at 1026; *see also Moniz v. Adecco USA, Inc.*, 72 Cal. App. 5th 56, 77 (1st Dist. 2021). These factors are assessed in view of "PAGA's public policy goals of 'benefit[ing] the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance.'" *Eisenacher v. VITAS Hospice Servs. LLC*, No. 20-cv-04948-RS, 2021 WL 1846574, at *2 (N.D. Cal. Apr. 2, 2021) (quoting *O'Connor*, 201 F. Supp. 3d at 1132–33).

### III. ANALYSIS

#### A. Fair Labor Standards Act

##### 1. Bona Fide Dispute

As a threshold matter, the Court finds that a bona fide dispute exists between the parties over potential liability under the FLSA. Plaintiffs' Complaint alleges Defendant became liable for damages by failing to pay the minimum wage required by FLSA when it failed to timely pay wages on payday and paid wages with checks that later bounced. (Comp. ¶¶ 112–18.) Plaintiffs' investigation revealed various alleged labor violations and corresponding civil and statutory penalties. (Martinez Decl. ¶¶ 2–3.) Defendant has denied these allegations and raised various affirmative defenses. (Ans. 10:24–21:22, ECF No. 7.)

Thus, there are legitimate questions about the existence of Defendant's FLSA liability and the ensuing extent of it.

### 2. Reasonable Settlement

Satisfied that a bona fide dispute exists, the Court next considers the relevant factors in determining whether the Settlement Agreement is fair and reasonable under the FLSA.

#### a. Plaintiff's Range of Possible Recovery

"A district court evaluates the plaintiff's range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims." *Selk*, 159 F. Supp. 3d at 1174. However, the settlement amount agreed to need not represent a certain percentage of the maximum possible recovery. *See id.*; *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."). Ultimately, the court must be satisfied that the amount agreed to is fair and reasonable under the circumstances presented. *See Selk*, 159 F. Supp. 3d at 1174.

Here, Plaintiffs proposed $75,000.00 at the ENE Conference to resolve this lawsuit. (Martinez Decl. ¶ 12.) This figure represented the approximate total amount of damages and civil penalties they alleged plus the accrued prejudgment interest as of the date of the ENE Conference. (*Id.* ¶¶ 11–12.) Since the agreed upon amount of $65,000.00 is approximately 86% of the alleged claims, the Court finds the Settlement Agreement is fair as it will remediate a significant percentage of Plaintiffs' alleged damages. Therefore, the Court is satisfied that the total amount bears a reasonable relationship to the true settlement value of the claims and is reasonable given the circumstances.

#### b. Stage of Proceedings

The court also evaluates the stage of the proceedings and the amount of discovery completed to ensure that "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). This factor will

weigh in favor of approval if the parties have sufficient information to make an informed decision regarding settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the parties did not engage in formal discovery as they did not proceed beyond the pleading stage. Despite this, Plaintiffs have investigated and documented the alleged labor violations entitling them to FLSA liquidated damages. (Martinez Decl. ¶ 3.) Furthermore, Plaintiffs have shared findings concerning damages, waiting time penalties, statutory penalties, and prejudgment interest owed to them with Defendant. (Martinez Decl. ¶¶ 7–8; Ochoa Decl. ¶ 6.) Given the information exchanged, the Court finds the parties had "sufficient information" to reach an informed decision. *Linney*, 151 F.3d at 1239. Accordingly, this factor favors approval of the Settlement Agreement.

### c. Seriousness of the Litigation Risks

Courts favor settlement where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). Here, there is a significant risk of lesser recovery or no recovery at all since fully litigating the matter could result in Defendant's dissolution. (Martinez Decl. ¶ 3; Ochoa Decl. ¶ 4.) Given the gravity of this risk and the uncertainty over the outcome of litigation, this factor weighs in favor of approving the Settlement Agreement.

### d. Scope of Release

"Courts review the scope of any release provision in a FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation." *Selk*, 159 F. Supp. 3d at 1178. Indeed, "a gap between the allegations brought in the case and the claims released in a settlement agreement will militate against finding the settlement fair and reasonable." *Id.* Here, the liability release is commensurate with Plaintiffs' claims. The Settlement Agreement provides a remedy for each claim raised and no claims or rights have been forfeited. (Settlement Agreement § 4; Martinez Decl. 8:6–9.) Thus, the Court is satisfied that the release provision is limited in scope and "does

not force class members to forfeit unrelated claims." *See Selk*, 159 F. Supp. 3d at 1179. Accordingly, this factor weighs in favor of approval of the Settlement Agreement.

### e. Experience of Counsel

"The opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11-cv-5188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). Plaintiffs' lead counsel has over twenty-four years practicing and specializing in labor and employment law, handling numerous wage and hour claims. (Ochoa Decl. ¶ 13.) Conversely, Defendant's counsel specializes in employment law and has over twenty-four years of practice, including routinely handling wage and hour class actions. (Martinez Decl. ¶ 20.) Further, Plaintiffs' counsel believe that their investigation accurately identified and assessed the damages asserted in the Complaint and that the Settlement fairly and reasonably remedies those claims. (Mot. 8: 11–19.) Consequently, the Court is satisfied with counsel's wealth of experience, and their opinion is given due weight. The Court finds that this factor also weighs in favor of approving the Settlement Agreement.

### f. Possibility of Fraud or Collusion

Finally, the possibility of fraud or collusion also factors into the fairness of a proposed settlement agreement. *See Selk*, 159 F. Supp. 3d at 1180. The Court finds no evidence that the parties or their counsel colluded or pursed their own self-interests in reaching the Settlement. The parties reached a settlement through negotiations facilitated by mediation, minimizing the risk of collusion. Moreover, the Settlement reflects a reasonable compromise of the disputed claims, damages, and the risk of further litigation. Lastly, the Court finds no evidence of "subtle signs" of collusion, such as "when counsel receive a disproportionate distribution of the settlement, or when the class receives no

monetary distribution but class counsel are amply rewarded." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Accordingly, this factor likewise favors approval of the Settlement Agreement.

### g. Attorneys' Fees

Lastly, because a court supervised settlement of FLSA claims is ultimately reduced to a judgment, under the FLSA an award of reasonable fees is required. *See* 29 U.S.C. § 216(b). Allowing parties to waive an award of fees could undermine Congress' intent that a FLSA claimant "should receive his full wages plus the penalty without incurring any expense for legal fees or costs." *See Maddrix v. Dize*, 153 F.2d 274, 275–76 (4th Cir. 1946). Therefore, the court must evaluate whether the award of attorneys' fees and costs is reasonable. *See Selk*, 159 F. Supp. 3d at 1180.

Here, Plaintiffs' counsel noted in their supplemental brief that they have waived their right to recover attorneys' fees and costs since the union representing Plaintiffs has agreed to cover these fees as a third-party payer. (ECF No. 19.) Additionally, Plaintiffs' counsel, in consultation with Plaintiffs and the union, have decided against negotiating terms that would reimburse the union for its attorneys' fees and costs to minimize the risk that they recover nothing given Defendant's liquidity problems. *Id.* The Court is satisfied this approach is reasonable given the insolvency concerns and because Plaintiffs are not forfeiting a significant portion of the Settlement to cover attorneys' fees and cost. Thus, this factor favors approval of the Settlement Agreement.

The Court is satisfied that the balance of the factors weighs in favor of approval. Therefore, the Court approves the FLSA Settlement.

### B. Private Attorneys General Act

As a preliminary matter, the Court finds that Plaintiffs have satisfied the statutory requirement of submitting the proposed Settlement Agreement to the LWDA. (Martinez Decl. Ex. 3.) Cal. Labor Code § 2699(l)(2). The Court further finds that the PAGA portion of the Settlement is "fundamentally fair, adequate, and reasonable." *See O'Connor*, 201 F. Supp. 3d at 1134.

- 9 -

23cv0897

First, the amount offered in the Settlement Agreement provides the LWDA and Aggrieved Employees with a significant percentage of the penalties alleged. The PAGA claimants contend they were owed approximately $14,000.00 in civil penalties as of the ENE Conference. (Martinez Decl. ¶ 12 n.3.) The Settlement includes a total payment of just over $12,000.00 in PAGA penalties. (Settlement Agreement § 3(a).) The parties calculated this figure by applying an 86% multiplier to the alleged claims and civil penalties. (Mot. 4 n.2.) Accordingly, the Settlement Agreement offers a fair and adequate remedy for the claims alleged in the Complaint and reasonably remediates the alleged labor violations raised therein.

Second, Plaintiffs' counsel identified and gathered evidence supporting Labor Code violations by recording the number of violations suffered and the corresponding civil and statutory penalties, suggesting a thorough investigation and well-documented case. (Martinez Decl. ¶¶ 2–3.) As such, the strength of Plaintiffs' case, combined with the risk, cost, and likely duration of further litigation—which could potentially lead to Defendant's bankruptcy—weigh in favor of approving the PAGA portion of the Settlement Agreement.

Finally, when considering the Settlement Agreement in relation to PAGA's public policy objectives—namely, enhancing the state's enforcement capabilities, promoting compliance, and deterring violations—it effectively advances these goals. The Settlement not only ensures the enforcement of state and federal labor laws but also requires Defendant bear a significant portion of the penalties associated with the noticed Labor Code violations. This serves to deter future violations and promote adherence to the law.

For these reasons, the Court approves the PAGA portion of the Settlement.

//
//
//
//
//
//

### IV. CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiffs' Motion for Approval of the Settlement Agreement. The Court **DISMISSES WITH PREJUDICE** this action and directs the Clerk of Court to close the case.

**IT IS SO ORDERED.**

DATED: September 25, 2024

Hon. Cynthia Bashant
United States District Judge